# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO VICTORIO & JENNY VICTORIO,<br><br>        Appellants,<br><br>   vs.<br><br>THOMAS H. BILLINGSLEA, JR., CHAPTER 13 TRUSTEE,<br><br>        Appellee. | CASE NO. 11-cv-1825-MMA<br><br>**ORDER AFFIRMING DECISION OF BANKRUPTCY COURT** |

Currently before the Court is an appeal of a decision by the Bankruptcy Court not to confirm Appellant's chapter 13[1] Confirmation Plan and *sua sponte* reversing the order disallowing CitiMortgage's proof of claim. Having considered the parties' submissions and the oral arguments of counsel, for the reasons set forth below, the Court **AFFIRMS** the Bankruptcy Court's decision.

## I. BACKGROUND

Appellants, Ricardo and Jenny Victorio, jointly filed for Bankruptcy protection under chapter 7 of the Bankruptcy Code in 2007. [Case 07-06247-LT7.] They listed their house as valued at $455,000 with $448,000 in consensual liens on it. IndyMac was scheduled as having the senior lien of $359,909, and CitiMortgage held a junior lien of $89,083. Appellants received a

---

[1] Unless otherwise stated, all references to chapters or sections herein are to the Bankruptcy Code (11 U.S.C. §§101-1532), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

discharge in that case on or about February 5, 2008.

On April 28, 2010, the Victorios filed for Bankruptcy again, this time under chapter 13. Their petition declared their home was now worth $213,500 and they still owed the identical amounts to IndyMac and CitiMortgage as they listed in their chapter 7 bankruptcy. Appellants' chapter 13 plan proposed to make monthly payments of $400 to cure an estimated $7,969 in arrears to IndyMac, $2,213 in property tax debts to the San Diego County Assessor, and to pay a dividend of 100% on $4,500 in unsecured personal debt that accrued in the two years since their prior bankruptcy. Appellants also proposed to "strip" CitiMortgage's now wholly unsecured junior lien on their property.[2] Appellants' chapter 13 Plan did not provide for any payments to be made on any debts that had been discharged in their prior bankruptcy, including the debt owed on CitiMortgage's junior lien.

On June 7, 2010, Appellee, the Bankruptcy Trustee, objected to confirmation of the proposed chapter 13 plan and moved to dismiss. The ground for the objection was that debtors were not eligible for a discharge, so any interim lien strip would be illusory. [Objection to Confirmation Plan, 10-07125-LT13 Doc. No. 17]

On July 9, 2010, Appellants filed a motion to strip CitiMortgage's lien. Neither CitiMortgage nor the Trustee opposed the motion. Judge Mann granted the motion to strip, finding that "junior lienholder's . . . claim may be treated as unsecured for purposes of this case and the lien may be stripped off the debtor's interest in the property following plan confirmation, completion of the plan, and resulting discharge if applicable." [Tentative Order dated September 10, 2010, 10-07125-LT13 Doc. No. 36, adopted as the Final Order of the Court on September 14, 2010, 10-07125-LT13 Doc. No. 38.]

On August 23, 2010 (subsequent to the filing to the motion to strip the lien, but before the Order was entered) CitiMortgage submitted an unsecured claim for $91,538.46. On September 11, 2010, Appellants objected to CitiMortgage's claim, arguing that the claim should be dismissed in

---

[2] Pursuant to 11 U.S.C. § 506(a) and (d), if a creditor's claim becomes wholly unsecured, the debtor may seek a determination that the lien securing that creditor's claim is void upon entry of discharge under Chapter 13. This is referred to a "lien stripping." This is discussed more fully below.

its entirety because it was listed and discharged in debtors' prior chapter 7 case. [10-07125-LT13 Doc. No. 39.] On October 18, 2010, Judge Taylor granted the objection and disallowed CitiMortgage's claim.

On July 8, 2011, Judge Bowie issued an Order on Appellee's Objection to Confirmation. After a lengthy discussion regarding the pre-BAPCPA case law and the conflicting case law regarding lien stripping in "chapter 20" cases, the Bankruptcy Court held that "debtors in a chapter 20 case cannot 'permanently' avoid a wholly unsecured junior lien without a discharge, or without paying it in full." Additionally, the Bankruptcy Court *sua sponte* reversed Judge Taylor's Order disallowing CitiMortgage's proof of claim. Finally, the Bankruptcy Court held that the plan was not confirmable, as it could not pay all claims in full within statutory time limits at the proposed rate of payment.

On August 17, 2011, Appellants sought leave to appeal the Bankruptcy Court's Order [Doc. No. 2], which the Court granted on August 22, 2011. [Doc. No. 3.] Thereafter, the parties briefed the issues on the appeal [Doc. Nos. 7, 9, and 10] and on February 21, 2012, the Court held oral argument. [Doc. No. 13.]

## II. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(3), which grants district courts jurisdiction to hear appeals from interlocutory orders and decrees, other than those issued under section 1121(d) of title 11, with leave of the Court.

When considering an appeal from the bankruptcy court, a district court applies the same standard of review that a circuit court would use in reviewing a decision of a district court. See *Ford v. Baroff* (*In re Baroff*), 105 F.3d 439, 441 (9th Cir. 1997). On appeal, a district court reviews a bankruptcy court's findings of fact under the clearly erroneous standard. See FED. R. BANKR. P. 8013; see also *Sigma Micro Corp. v. Healthcentral.com* (*In re Healthcentral.com*), 504 F.3d 775, 783 (9th Cir. 2007). The bankruptcy court's conclusions of law, including its interpretation of the Bankruptcy Code, are reviewed de novo. *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc.* (*In re Int'l Fibercom, Inc.*), 503 F.3d 933, 940 (9th Cir. 2007).

///

### III. ISSUES ON APPEAL

1. Did the Bankruptcy Court err in *sua sponte* overruling the order disallowing CitiMortgage's claim?

2. Did the Bankruptcy Court err in concluding that a "chapter 20"[3] debtor cannot permanently avoid an unsecured junior lien without a discharge or payment in full?

3. What is the disposition of a "chapter 20" case upon completion of the plan payments where debtor is ineligible for discharge?

4. Did the Bankruptcy Court err in concluding that Appellants' chapter 13 plan is not confirmable as proposed?

### IV. DISCUSSION

#### *1. The Status of CitiMortgage's Claim*

Appellants argue the Bankruptcy Court erred in holding that CitiMortgage had an unsecured claim in their chapter 13 case. According to Appellants, CitiMortgage cannot have an allowed claim in their chapter 13 case, because CitiMortgage's unsecured claim was discharged in their prior chapter 7 case. Appellants also argue the claim is not enforceable against Appellants personally because all personal liability for the debt was extinguished by the chapter 7 discharge. Furthermore, Appellants argue the claim is not enforceable against their property because it is unsecured.

In response, Appellee argues that according to the Supreme Court's decision in *Johnson v. Home State Bank*, the chapter 7 discharge extinguishes the *in personam* (personal) liability on a debt secured by the debtor's property, but the *in rem* liability (the creditor's right to foreclose on the collateral) survives or passes through bankruptcy. 501 U.S. 78 (1991). This argument is persuasive.

*Johnson* is the seminal case establishing the status of a creditor's lien on the debtor's property after a chapter 7 discharge. In that case, the Supreme Court held that a discharge in a

---

[3] "A 'chapter 20' case is one where a debtor has received a discharge in a Chapter 7 case, and then files a Chapter 13 within the time period set in 11 U.S.C. § 1328(f) prohibiting a further discharge." *In re Casey*, 428 B.R. 519, 512 (Bankr. S.D. Cal. 2010).

chapter 7 extinguishes the debtor's *in personum* liability for the debt, but "a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy." *Johnson*, 501 U.S. at 83 (citations omitted). The Supreme Court went on to say that "the mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5)."[4] *Id.* at 84. According to the Supreme Court,

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

*Id.*

Here, Appellants received a discharge in their chapter 7 bankruptcy and subsequently filed for bankruptcy under chapter 13. In response to Appellants' chapter 13, CitiMortgage submitted an unsecured claim for $91,538.46. Appellants objected to CitiMortgage's claim arguing that the claim should be dismissed in its entirety because it was listed and discharged in debtors' prior chapter 7 case. Judge Taylor granted the objection and disallowed CitiMortgage's claim. Later, however, Judge Bowie *sua sponte* overruled Judge Taylor's order disallowing CitiMortgage's claim.

According to *Johnson*, the chapter 7 discharge did not extinguish CitiMortgage's junior lien or remove it from Appellants' property; it merely enjoined CitiMortgage from enforcing the discharged debt against Appellants personally. Nevertheless, Appellants attempt to distinguish this case from *Johnson*, by arguing that there is nothing in *Johnson* to indicate that the claim in that case was unsecured, whereas here CitiMortgage's claim is unsecured. Therefore, Appellants argue, by virtue of the fact the claim is unsecured, it is no longer enforceable against Appellants or their property.

---

[4] Section 101(5) defines the term "claim" as: "(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, *secured, or unsecured*; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, *secured or unsecured*." (*Emphasis added*).

This argument is unpersuasive because the express language of §101(5) defines a claim as a right to payment, or a right to an equitable remedy, *whether or not the right is secured or unsecured*. §101(5). Furthermore, the determination of whether a claim is unsecured under § 506(a), and thus void under § 506(d), does not determine whether the claim is allowed or disallowed, it only prescribes how a secured claim is to be treated. See *In re Hill*, 440 B.R. 176, 184 (2010). Instead, § 502 serves that function. Under § 502(a) proof of a claim is "deemed allowed" in that amount, "unless a party in interest ... objects." Section 502(b) provides that if a party in interest objects to a claim, "the court, after notice and a hearing, shall determine the amount of such claim . . .".

Appellants did object to CitiMortgage's claim; however, the basis for the objection was that the debt was extinguished in the prior chapter 7. As discussed above, the prior chapter 7 extinguished only Appellants' personal liability on the debt, and CitiMortgage still has a "claim" within the meaning of §101(5), notwithstanding the fact that the claim is unsecured.

Accordingly, the Court **AFFIRMS** the Bankruptcy Court's reversal of the order disallowing CitiMortgage's claim.

## 2. *Lien Stripping in a "Chapter 20" Bankruptcy*

The next issue on appeal is whether a "chapter 20" debtor is entitled to "strip" unsecured junior liens, and if so, whether such lien stripping is permanent in the absence of a discharge. For the reasons set forth below, the Court concludes that a "chapter 20" debtor may avail himself or herself of "lien stripping" pursuant to 506 or 1322. Nevertheless, the Court **AFFIRMS** the Bankruptcy Court's decision that "lien stripping" is not permanent in the absence of a discharge or payment in full.

a.   <u>Lien Stripping in Chapter 13 Cases</u>

The term "lien stripping" refers to a debtor's ability to reduce an undersecured creditor's claim to the present value of its collateral through claim valuation under 11 U.S.C. § 506(a) and (d). A claim's status as secured, and the amount of the secured claim, is determined based upon the value of the property to which the lien in question attaches and the amount of any senior liens.

See § 506(a).[5] The process of bifurcating the secured from the unsecured claim is referred to as a 'strip-down' because the lien is stripped down to the value of the collateral. *In re King*, 290 B.R. 641, 645 (Bankr. C.D. Ill. 2003). "Where the collateral is fully encumbered by a prior lien so that no value is available to support a junior lienholder's secured claim, the entire debt is classified as unsecured." *Id.* To the extent that a lien does not attach to any value, it is void by operation of § 506(d).[6] *King,* 290 B.R. at 645. "This is referred to as 'strip-off' since the lien is entirely stripped off and eliminated." *Id.*

Section 506(d), however, is subject to several exceptions beyond those specified in that section. In *Dewsnup v. Timm*, the Supreme Court expressly prohibited lien stripping in chapter 7 cases. 502 U.S. 410, 417 (1992). *Dewsnup*, however, does not apply in chapter 13. *In re Tran*, 431 B.R. 230, 234 (Bankr. N.D. Cal. 2010) (citing *In re Enewally*, 368 F.3d 1165, 1170 (9th Cir. 2004). But in chapter 13 cases, § 506(a) and (d) is qualified by § 1322(b)(2), which permits a chapter 13 debtor to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." § 1322(b)(2). Nevertheless, a chapter 13 debtor may utilize § 506(a) and (d) to strip off a lien on the debtor's principal residence, if the lien is completely unsecured. *Tran*, 431 B.R. at 234 (citing *In re Zimmer*, 313 F.3d 1220, 1226-27 (9th Cir. 2002)).

b.      <u>Effect of Section 1328(f) on Lien Stripping</u>

In 2005, the BAPCPA added a new section § 1328(f)[7] to the Bankruptcy Code, prohibiting discharge in a chapter 13, where the debtor received a discharge in a chapter 7 within the preceding four years. "This change allows debtors the automatic stay and a chance to work out a

---

[5] Section 506(a) provides: "An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim . . ."

[6] Section 506(d) provides: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . ."

[7] Section 1328(f) reads in relevant part, "the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge – (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter . . ."

repayment plan, but it denies them the benefit of the chapter 13 discharge." *In re Winitzky*, 2009 Bankr. LEXIS 2430 (Bankr. C.D. Cal. May 7, 2009).

Here, Appellants are not entitled to a discharge by virtue of § 1328(f), because they received a chapter 7 discharge less than four years before they filed their chapter 13. Despite the unavailability of a discharge, Appellants seek to strip off CitiMortgage's wholly unsecured lien from their property. This raises the issue of whether a "chapter 20" debtor can invoke § 506 and § 1322 to permanently strip unsecured liens, in the absence of a discharge. The Bankruptcy Court below held they could not.

On appeal, Appellants argue that § 1328(f) does not affect their lien strip because lien stripping is effective immediately upon plan confirmation, not at the time of discharge. In response, Appellee argues that lien stripping is not permanent until discharge and in the absence of a discharge, a lien strip cannot be permanent.

Although there is nothing in the Bankruptcy Code expressly prohibiting lien stripping in a "chapter 20" case, the courts are divided whether such relief is available to debtors not eligible for a discharge pursuant to § 1328(f). See *In re Jarvis*, 390 B.R. 600, 605-06 (Bankr. C.D. Ill. 2008) (finding discharge a necessary prerequisite to permanency of lien avoidance); *see also Winitzky*, 2009 Bankr. LEXIS 2430 (precluding lien stripping in a "chapter 20" case because it would enable the debtor to use chapter 13 to get around the prohibition of lien stripping in chapter 7); *but see Tran*, 431 B.R. at 237 (holding that "the Bankruptcy Code does not prohibit strip off of a wholly unsecured junior lien in a chapter 13 case, merely because the debtor is ineligible for discharge under § 1328(f)(1)"); *but see also In re Okosisi*, 451 B.R. 90 (Bankr. D. Nev. 2011) (finding that nothing in the Bankruptcy Code prevents the "chapter 20" debtor from permanently avoiding a lien).

The cases finding that lien stripping is available to "chapter 20" debtors emphasize that nothing in the Bankruptcy Code conditions a chapter 13 debtor's right to modify or strip off liens on the debtor being eligible for a discharge. *Tran*, 431 B.R. at 235. "By its plain terms, § 1328(f) does not require another discharge when a later case is filed; it simply denies an untimely discharge in the later case." *Hill*, 440 B.R. at 182. Likewise, nothing in §109(a), (e), and (g),

which sets forth requirements for chapter 13, conditions a debtor's eligibility for relief under chapter 13 on the debtor's eligibility for a discharge. *Tran*, 431 B.R. at 235. "Moreover, nothing in § 506, § 1322, or any other section of the Bankruptcy Code provides that a chapter 13 debtor's right to modify or strip off liens is conditioned on the debtor being eligible for a discharge." *Id*.

In contrast, the cases precluding lien stripping in "chapter 20" cases focus on the fact that in the absence of a discharge or payment in full, a lien strip in a "chapter 20" is illusory.[8] As stated in *Casey*,

> Under the Bankruptcy Code, there are only two ways to make an enforceable debt go away permanently. One is to pay it in full. The other is to obtain a discharge of any remaining obligation. In the case of a "Chapter 20", there can be no discharge, and conversion is not an option. Dismissal is the necessary result, without a discharge, when a debtor performs a plan that leaves one or more debts wholly or partially unpaid. Any other outcome would give the debtor a *de facto* discharge when by statute *no* discharge is available.

428 B.R. at 522. (*Emphasis in original*). Furthermore, in the absence of a discharge, "any modifications to a creditor's rights imposed in the plan are not permanent and have no binding effect once the term of the plan ends." *In re Lilly*, 378 B.R. 232, 236-37 (Bankr. CD. IL 2007) (citations omitted).[9] "This longstanding principal was not altered by BAPCPA." *Id*.

In a chapter 13, lien avoidance is established at confirmation of the debtor's chapter 13 plan, but it does not become permanent until the debtor completes all payments under the plan and receives a discharge. See *In re Stroud*, 219 B.R. 388, 390 (Bankr. M.D.N.C. 1997). "For those debtors who successfully confirm and complete a chapter 13 plan, the chapter 13 discharge operates as a permanent injunction against the collection of debts to the extent of the debtor's personal liability on the debt." *In re Osokisi*, 451 B.R. 90, 95 (Bankr. D. Nev. 2011) (citing 11

---

[8] Several courts reached this conclusion based on § 1325(a)(5), which provides that the holder of a secured claim retains a lien securing such claim until either payment in full of the underlying debt or discharge. *See e.g. In re Fann*, 428 B.R. 494, 500 (Bankr. N.D. Ill. 2010). However, § 1325(a)(5) is inapplicable in the present case because the claim at issue is unsecured. See *Hill*, 440 B.R. at 182-83 (Section 1325(a)(5) does not apply to unsecured creditors). Accordingly, the Court will not consider § 1325(a)(5) in determining whether lien stripping is available in this action.

[9] The *Lilly* court's analysis of the extent to which modifications of a creditor's rights may occur in absence of a discharge is instructive, notwithstanding the fact that the *Lilly* court's decision focused on § 1325(a)(5)(B), which provides specifically for the treatment of "allowed secured claims" and the claim at issue here is not an "allowed secured claim." See *Jarvis*, 390 B.R. at 605-06.

1  U.S.C. § 524).  The combined effect of the discharge and lien stripping in a chapter 13 is that
2  "both the personal liability for the debt and the lien allowing the creditor to proceed against the
3  property have been removed, making the debt uncollectible."  *Id.*

4  However, if the chapter 13 is dismissed or converted into a chapter 7, the lien is reinstated.
5  *Winitzky*, 2009 Bankr. LEXIS 2430.  Thus, the "lien-avoiding effect of a confirmed plan, while
6  established at confirmation, is contingent upon a discharge pursuant to Section 1328."  *King*, 290
7  B.R. at 651; *see also Jarvis*, 390 B.R. at 607 ("the actual 'strip off' occurs not at confirmation, but
8  rather at discharge.").

9  The Bankruptcy Court below conducted a thorough review of the relevant pre-BABCPA
10  case law and the conflicting case law regarding lien stripping in "chapter 20" cases, and ultimately
11  concluded that "chapter 20" debtors cannot "permanently" avoid a wholly unsecured junior lien
12  without a discharge, or without paying the debt in full.  The Bankruptcy Court stated "[debtors]
13  could not do so before BAPCPA, and there is nothing in the 2005 amendments that even hints that
14  Congress believed that any ending other than conversion or dismissal was possible, much less
15  desirable, as emphatically demonstrated by the amendments to 11 U.S.C. § 348 and § 1328(f)."
16  [10-07125-LT13 Doc. No. 42, p. 50.]

17  On appeal, Appellants argue the Bankruptcy Court erred in holding that Appellant's
18  chapter 13 must inevitably end with conversion or dismissal.  Rather, Appellants argue the proper
19  result once a "chapter 20" plan has been successfully completed is to close the case without
20  discharge.  In response, Appellee argues the proper disposition in a "chapter 20" is dismissal
21  because the debtor is not eligible for discharge and conversion to chapter 7 is not appropriate.

22  Prior to the passage of the BAPCPA in 2005, there were only three possible dispositions of
23  a chapter 13 case – discharge pursuant to § 1328, dismissal "for cause" under § 1307(c) and
24  conversion to chapter 7 pursuant to § 1307(c).  *In re Leavitt*, 171 F.3d 1219, 1223 (9th Cir. 1999).
25  Since dismissal and conversion reinstate the lien, discharge is the only possible conclusion that
26  would permanently enjoin creditors from seeking recourse against the debtor after the conclusion
27  of the bankruptcy.

28  Nevertheless, Appellants argue that there is a fourth option – closing the case without a

1   discharge. According to Appellants, this option enables "chapter 20" debtors to permanently strip
2   away unsecured liens despite § 1328(f)'s prohibition of discharge. This argument is primarily
3   based on *Okosisi*, which reasoned that the BAPCPA's addition of § 1328(f) created a "fourth
4   option" – completion of all plan payments without a discharge. Under this fourth option,

> [T]he code sections that reverse any lien avoidance actions contained within a chapter 13 plan upon conversion or dismissal are not implicated, and thus, do not prevent permanence of the lien avoidance. Once a debtor successfully completes all plan payments required by a chapter 13 plan, the provisions of the chapter 13 plan become permanent and the lien avoidance is, similarly, permanent.

9   451 B.R. at 100. (Internal citations omitted). Therefore, according to this rationale, in a no-
10  discharge chapter 13, lien avoidance is permanent upon completion of the plan and the case is
11  simply closed pursuant to § 350. *Id*. at 99.

12  The Bankruptcy Court below firmly rejected the holding in *Okosisi,* stating that the *Okosisi*
13  court ignored the fact that the only way to make a lien strip "permanent" is by discharge because
14  conversion or dismissal reinstates the avoided lien. *In re Victorio*, 454 B.R. 759, 778 (Bankr. S.D.
15  Cal. 2011). According to the Bankruptcy Court, *Okosisi* simply invented the idea that enactment
16  of § 1328(f) "created a fourth option," where no such option existed. *Id*. The lower court's
17  rejection of *Okosisi* is persuasive.

18  "Where the text of the Code does not unambiguously abrogate pre-Code practice, courts
19  should presume that Congress intended it to continue unless the legislative history dictates a
20  contrary result." *In re Bonner Mall Partnership*, 2 F.3d 899, 913 (9th Cir. 1993) (citing *Dewsnup*,
21  112 S. Ct. at 779). Prior to the BAPCPA, there were only three conclusions to a chapter 13 –
22  dismissal, discharge and conversion. *Okosisi* creates a fourth way to conclude a chapter 13 case –
23  closing the case without a discharge. *Okosisi* then concludes that this "fourth option" enabled
24  liens avoided pursuant to § 506(d) and § 1322(b)(2) to become permanent upon completion of the
25  chapter 13 plan, despite the absence of a discharge.

26  As the Bankruptcy Court below makes clear, "Congress fully understood how to make lien
27  avoidances "permanent" and "[h]ad Congress intended avoidance of liens under § 506(d) to be
28  "permanent", other than by discharge, they easily could have so provided . . ." *In re Victorio*, 454

B.R. at 776. Nevertheless, the Bankruptcy Court, concluded that there is nothing which even hints that "Congress intended to change the pre-existing state of the law that the only way a debtor could make a lien strip 'permanent' was through a discharge, because the lien was expressly reinstated upon dismissal or conversion." *Id*. At 779. The Court went on to state that

> To suggest that Congress should be thought to have wittingly or otherwise abrogated that requirement by adoption of § 1328(f) strains credulity, especially when one contemplates that § 1328(f) was adopted to restrict the relief a serial filing debtor could obtain if the later filing was within a specified time after the earlier discharged case.

*Id*. at 779. Thus, if Congress intended to permit "chapter 20" debtors to permanently strip liens, they could have done so, but they chose not to.

Furthermore, any alternative that would make lien stripping permanent upon completion of the chapter 13 plan would make an end run around § 1328(f) and result in a *de facto* discharge when by statute no discharge is available. *Casey*, 428 B.R. at 522; *see also Winitzky*, 2009 Bankr. LEXIS 2430, 9-10. As the Bankruptcy Court below noted, the *Okisisi* opinion has a "curious" section captioned "The Misnomer of the So-called 'De-Facto Discharge." This section is "curious" because, "[a] 'permanent' bar to collection of an otherwise outstanding debt is very properly called a '*de facto* discharge', because that is the result the opinion endorses." *Victorio*, 454 B.R. at 780. There no evidence that, "by adding new § 1328(f), Congress intended to expand a debtor's remedies" to permit permanent modification of a creditor's rights, where such modification has traditionally only been achieved through a discharge. *Jarvis*, 390 B.R. at 605-06. "The discharge is the ultimate reward of bankruptcy, and attempting to devise mechanisms to achieve a *de facto* discharge of liability when Congress says "no discharge", is to attempt an end run of a clear mandate." *Victorio*, 454 B.R. at 780. (citations omitted). Accordingly, the Court rejects the fallacy of the fourth option.

This is not to say, however, that lien stripping is not available to the "chapter 20" debtor. Section 1328(f) prohibits *discharge* but does not prohibit *filing* of a chapter 13 within four years of a chapter 7. In fact, "[n]othing in the Bankruptcy Code precludes a debtor that is not eligible for a discharge from filing a chapter 13 case, obtaining a confirmation of a chapter 13 plan, and with the exception of the right to a discharge, from enjoying all of the rights of a chapter 13 debtor,

including the right to strip off liens." *Tran*, 431 B.R. at 237; see also *Casey*, 428 B.R. at 522-23.

Finding that lien stripping in a "chapter 20" is permissible, but not permanent, permits "chapter 20" debtors to avail themselves to the benefits of chapter 13 by paying off personal debts according to a chapter 13 plan while benefitting from the automatic stay. *Jarvis*, 390 B.R. at 605. The debtor's chapter 13 plan must still meet the requirements for confirmation set forth under §§ 1322 and 1325. Once payments under the plan are complete, the case shall be closed pursuant to § 350 without the benefits of a discharge.

Despite the availability of lien stripping for the "chapter 20" debtor during the chapter 13 plan, closing the case without a discharge will create problems for the debtor. As the Bankruptcy Court below noted,

> The automatic stay of an act other than against property of the estate terminates on the closing of the case under 11 U.S.C. § 362(c)(2)(A). There is no discharge injunction arising from the Chapter 13 because there is no discharge. Moreover, property of the estate that was identified in a debtor's Schedules in accordance with 11 U.S.C. § 521(a)(1) is deemed abandoned to the debtor upon closing, in accordance with 11 U.S.C. § 554(c), so the property is no longer protected by any stay or injunction. So the debts addressed in the Chapter 13, but not paid in full through the plan, still exist because they have not been either satisfied under nonbankruptcy law nor discharged in bankruptcy. And there is nothing in the Bankruptcy Code to prevent creditors from endeavoring to collect the remaining debts.

*Victorio*, 454 B.R. at 779. Therefore, the only way a "chapter 20" debtor can "permanently" avoid liability on the debt is by payment in full during the course of the chapter 13 plan. Accordingly, the Court **AFFIRMS** the Bankruptcy Court's conclusion that a "chapter 20" debtor cannot permanently avoid an unsecured junior lien without a discharge or payment in full.

### 3.     *Confirmation of Debtor's Chapter 13 Plan as Proposed*

The Bankruptcy Court below concluded that Appellants' chapter 13 plan is not confirmable as proposed because it cannot be timely completed in 60 months with 100% payment to unsecured creditors while making payments of $400. The plan could not pay Appellants' unsecured debts in full because the plan did not include CitiMortgage's unsecured claim of $91,538.46. As discussed above, CitiMortgage has a valid unsecured claim of $91,538.46, and Appellants should have included this claim in their chapter 13 plan. Therefore, the Court finds the Bankruptcy Court below did not err in declining to confirm Appellants' chapter 13 plan.

## V. Conclusion

For the reasons set forth above, the Court finds that the Bankruptcy Court did not err in reversing the order disallowing CitiMortgage's claim. The Court also finds that the Bankruptcy Court below did not err in concluding that a "chapter 20" debtor cannot permanently strip liens in the absence of discharge or payment in full. Finally, the Court finds that the Bankruptcy Court did not err in concluding that Appellants' chapter 13 plan was not confirmable as proposed.

DATED: February 24, 2012

*Michael M. Anello*

Hon. Michael M. Anello
United States District Judge